Thank you, and may it please the Court. I'd like to reserve three minutes of my time for rebuttal, if I may. Kelly Sager for the Film Defendants. I'm going to start by addressing the Court's question that was sent out to Council about the application of the Burrell decision from the California Supreme Court that came down in August of this year. It is relevant to the decision here for at least two reasons. The first is that, as a general principle, the California Supreme Court has once again reiterated that the SLAPP statute must be interpreted broadly. It cannot be avoided by a plaintiff creatively pleading, and it doesn't matter what the particular claim is that is at issue. But more directly, the Burrell decision is relevant here because we think that it actually rejects the very premise on which the District Court based its decision in finding that the SLAPP statute did not apply. The District Court treated the alleged failure to pay as a distinct act, somehow separate from the allegations in the complaint that the defendants created and produced and distributed feature films. But even if the Court here agrees that that is somehow a distinct act from the actual creation and distribution of expressive works, the Burrell Court says that the same primary right may be violated by both protected and unprotected activity. So it rejected focusing on what the plaintiff's quote-unquote rights are, which is what the District Court focused on, the right to receive money, and that's what the plaintiff has argued before this Court. But instead, the Burrell decision holds that, and I quote, if the allegations of conduct in the complaint that provide the basis for an alleged legal grounds for recovery include both speech-related conduct, as they describe it, protected conduct, and unprotected conduct, the Court said the pleaded claim arises at least in part from protected activity and is subject to the special motion to strike. So your – is your main claim then that Appellant's failure to credit Appley as a writer subject to the anti-SLAPP statute, is that the main basis of your unprotected claim? The failure to credit, per se, Your Honor, has been actually abandoned by the plaintiff. The failure to credit, as part of one of the claims, is barred by the United States Supreme Court decision in Daystar, and the plaintiff has conceded that the failure to credit is no longer part of the lawsuit. What the plaintiff now claims is that by using his ideas, the content of the films incorporated ideas that he claims belong to him, and by using those ideas in the films, that he was entitled to receive compensation under an applied contract theory. The district court focused on the remedy, the relief, and said the plaintiff is entitled to receive money if, in fact, there was an implied contract and the implied contract was breached. But that's not the proper focus of the SLAPP statute. The SLAPP statute looks at the conduct of the defendants, and the conduct that he claims led to the breach of the implied contract is that they put out two feature films that he says incorporates his work, that his ideas were used in those films. That's the act, the conduct that actually falls within the scope of the SLAPP statute. Counsel, that's where I'm confused. I'm with you with the idea that this new California Supreme Court case changes parts of the analysis. I understand that argument. But how is this case any different if I invent a device, not a script, we'll call it the perjurer, and it's something that unclogs drains, right? And I send this device to all these companies, and I send it to Home Depot, and Home Depot starts selling something called the perjurer. And it looks a lot like my creation. And I sue Home Depot, saying this is my intellectual property, this is my idea, my design, and you stole it. Are you saying in that instance that SLAPP would apply there? No, Your Honor, because neither the device or anything about the device is actually speech-related. It's not speech. No, I understand. But the right they're complaining about is not that their First Amendment right was harmed in some way. It's that they had an idea that was effectively stolen from them. How is that different than the device I described? The idea that they own something and your client stole it. Because the entire claim depends on the content of my client's films. But for the content of the films, there would be no claim. They're asserting that the content of the films incorporates his ideas. That's pure speech. Even without Baral, it's our position that the district court erred in not finding that that is a speech-related act. Taking content and putting it into a film is speech and acts in furtherance of speech. So your view would point with me that anytime we have a copyright infringement case, there's a First Amendment issue? Well, a copyright infringement case is not covered by the SLAPP statute, Your Honor, because federal claims are not covered by the statute. Okay, but a state law corollary to copyright, a state law intellectual property case involving words, you're saying that that always has the First Amendment? Well, I hesitate to say always, and it's not really a First Amendment issue per se, but if it involves acts that are speech, the act of speaking or acts in furtherance of speech, which certainly putting out a feature film is both speech and acts in furtherance of speech, that's where it falls under the SLAPP statute. This is not a situation like the district court analogy came up with where he said, well, what about a newspaper writer whose employer doesn't pay him? The content of what the newspaper writer does there is irrelevant. It's not the fact that he's writing something for the newspaper. It's the fact that he's not paid for his 40 hours of work. The work itself, it doesn't matter if it's a janitor or a newspaper writer. The content doesn't matter. But here, but for the content of the film, there would be no claim. The only reason there's a claim is because the plaintiff argues the content was something that he created and that he was entitled to be paid for, and not paid for under a copyright theory with respect to the claims before this court, paid for under an implied contract theory. But the content is the entire basis for the claim. It's about 10 pages of the plaintiff's complaint. So if he truly believes the content is irrelevant and it's only about a contract that has nothing to do with the content, then it's hard to explain why they would put 10 pages of content in the complaint, all of which are related to comparing the two works. Counsel, if the film had not been made or distributed, would Apley have a claim? No, Your Honor. His entire claim is based on the alleged inclusion of his ideas in a film that was created and distributed by my clients. That's the only basis for his claim. He's not claiming they had to do some work with him or that there was some other basis for a contract claim. It's only about my clients putting out feature films that he says copied the content from his ideas. That's the only basis for the claims. The relief he's seeking is contract relief. He wants money. But that's a measure of relief. That's not the conduct that my clients engaged in that led him to sue. I wonder why doesn't the implied ratio contract and declarative relief claims arise from appellants' creation, production, and distribution of the works. Well, under the SLAP statute, Your Honor, it's our belief that it does arise from those acts, that that's where the claim arises from, and that's why it falls within the scope of the SLAP statute. We believe the district court erred in reading the claim too narrowly, and under Baral it doesn't matter whether the district court was correct or not in saying that a failure to pay is an act. There's also an act here that clearly involves speech or acts in furtherance to speech, and for that reason it falls within the scope of the SLAP statute. Would you like to reserve? Yes, Your Honor. Your client is arguing that there was an implied agreement based on custom and practice in the industry to give him credit as a writer and creator of the film, and that this involves an element of speech. He wants his name on there so that people can see that he was a writer and a creator. If the credit claim were still in the case, Your Honor, it's our position that also was subject to the SLAP statute because under the Cronemeyer case, which the California Court of Appeal decided, that precise issue, whether his name is included in the film or not or put on the copies of the film that are distributed, that also is part of the speech related to the film, and that speech is also protected by the SLAP statute. But the plaintiff has abandoned the credit claim and only argues now he's entitled to money based on the content of the film, whether the ideas, the concepts, the storyline, whether those things were taken from him. That's all about the content of the films, Your Honor, and we believe that that's protected by the SLAP statute. If I may, Your Honor, I'll reserve the remainder of my time. And we'll give you two minutes in rebuttal. Thank you, Your Honor. May it please the Court. I'm Glenn Kulick for the Appalee. This case involves a cause of action for breach of implied and fact contract, which was originally created and recognized by the California Supreme Court in 1956 in Desney v. Wilder. It's important to understand that in most instances the Desney claim or the so-called Desney claim is the only legal theory that a writer can rely on to attempt to protect his or her creative ideas. And for that reason, the Desney claim has been under attack for decades by large entertainment companies who are attempting to eradicate it. And the latest defense du jour or tactic du jour is the anti-SLAP motion. An anti-SLAP motion is now brought in response to every idea submission claim that is filed. I agree with what the appellants wrote on page four of their reply brief, that the issue before the court is what is the allegedly wrongful and injury-inducing conduct. That's what this court should be focused on. That's what the appellants said in their brief, but then they ignored that afterwards. They're talking about the idea and the making of a film. The making of the film, the use of the idea, was not the wrongful or injury-producing conduct, as I'll get to in a moment. There's three choices here. Either the cause of action arises from the production and dissemination of a film, as the appellants contend. It arises from the breach of a promise to pay, as my client contends. Or it arises from a mixture of both, as the Supreme Court recently indicated in California is at least a possibility. Now, according to the SLAP statute, it was adopted so that the legislature could express its concern for the lawsuits, an increase in lawsuits that were being brought to chill the First Amendment rights of people. And it's important to understand the DESNY claim is not intended to chill anybody's rights. The DESNY claim understands the reality that the only way that a writer can get his ideas out in the world is to pitch or present them, and when he does so or she does so, they're at the total mercy of the person receiving it. And the DESNY claim is the only theory that's available in most cases to try to protect that. It's not an attempt to chill somebody's rights. It's an attempt to get paid for services rendered, and that's what the claim is about. The cause of action may be 60 years old, but there's a great deal of misunderstanding about the nature of the claim. And if we do nothing today, by the time we leave here, it's important that we all, I think, understand the nature of the claim for breach of implied in fact contract. On page 10 of the reply brief, the appellants say that implied in fact contract is a legal fiction. It's not a legal fiction. That is a misstatement of the law. An implied in fact contract is a contract like any other, the only difference being that you prove the formation and the terms by the conduct of the parties as opposed to their words, but it's a real contract. And appellants are also confused when they say that it's the use of the idea that is the injury-producing conduct or the gravamen of the case. That's just not true. Under an implied in fact contract theory, when you disclose an idea, the writer wants the defendant to use that idea. He begs the defendant to use that idea. He prays for the defendant to use that idea because if the defendant uses the idea, it triggers a promise to pay, and it's the breach of that promise to pay which is the only wrongful and injury-producing conduct that is involved in the claim for breach of implied in fact contract. Now, in addition to the fact that there are myriad state court cases. You're saying there's no speech? Correct. What I'm saying is you don't just look at everything in the universe. You look at the allegedly wrongful and injury-producing conduct. That's what you have to look at to decide if that arises, because that's the gravamen of the case, if that arises from protected activity. And what I'm saying is with a DESNY claim with implied in fact contract, it doesn't. The writer wants the defendant to use the idea. He gives it to them to use the idea. The use of the idea is simply the condition precedent to the promise to pay and the duty to pay, and the only wrongful act, the only time that the writer can sue is for nonpayment for the idea. That's what it's all about. It's not about the use. It's about the promise to pay. Now, how do we know this? Because there are myriad state court cases for 60 years which have told you what the claim for implied in fact contract is about. It's about an implied promise to pay, and the wrongful act is the failure to pay. It's not the use of the idea. I can't sue somebody for using my idea, because as Justice Treanor told us many years ago, ideas are as free as the air. The only thing I can sue them for is breach of the contract that we formed to pay for the idea if you used it, and that's what Judge Fitzgerald understood correctly, I believe, in the district court below. You have to look at the gravamen of the case, whether you call it the gravamen or you call it the trigger point, whatever you want to call it, it's the failure to pay and the failure to pay only that gives rise to the cause of action. Another example. I can't enjoin you on a contract theory from using my idea. If this was copyright, I can enjoin you, because the act of copying is a wrongful act, and I can get an injunction against you copying my material. I can't get an injunction. There's no case in history which is granted an injunction in an idea theft context, because with the idea theft, you're giving the person the idea to use. They can use it. The only wrongful act is if they use it, that triggers the duty to pay, and if they don't pay, that's the wrongful act. Now, the Ninth Circuit, I believe, has reached the same conclusion. It did so in a very important context. In 2004 in Grosso, in 2010 in Binet, and 2011 in Monts. Those were the copyright preemption cases. You may recall from 1994 to 2004, just like we have today with anti-SLAPP. In those days, the tactic was every time you file an idea submission claim, it's removed to federal court based on copyright preemption. For 10 years, we all slugged it out on that issue, and many trial judges mistakenly bought the argument, until this court in those three cases said, no, you're misunderstanding the nature of an implied and fact contract. Kath, let me jump in here. Sure. Let's assume this is purely hypothetical. We agree with you on the central issue here is that SLAPP does not cover this activity. There is this recent Supreme Court case from California. Now, your opposing counsel indicated that the claim that we were asking about, this failure to credit, is no longer in the case. Correct. That's correct? This is just about promise to pay. So if you were to prevail in this court, this matter still goes back to district court for further proceedings, correct? Correct. And so we could say, I would suppose, that even if we agreed with you, and what I'll call the merits of the main merits of the case, we could always recommend district court that it be aware of this new California Supreme Court case and apply it as it sees fit in case there's some claim we're not seeing here. Yes. But let me briefly address that California Supreme Court case, if I might. I don't see anything earth shattering about that case. That case addressed a situation in which, as the court acknowledged, sometimes when plaintiffs file a single count, within that one count, they allege multiple wrongful acts. And it may be possible that in a given instance, one of those wrongful acts arises from protected activity, and one of those wrongful acts doesn't. And what that court said is that you don't have to make a slap motion as to an entire cause of action or an entire action. It's just like any motion to strike. You can pick and choose. If there's something wrong about the complaint, you can move to strike just that part of the complaint. So I have no quarrel with that holding. But here's the thing. With a breach of implied, in fact, contract claim, there is no mixed cause of action. There are not multiple wrongful acts. What I'm trying to impress upon you is that use of the idea is encouraged. Well, you know what you impressed on me, that you weren't even aware of this critical California Supreme Court case until we asked you to brief it. Am I correct in that? You are correct in that. That's why you got the nerve to come here, and you missed this thing completely. And you're making the same argument you made to the district judge. And there is, as far as I'm concerned, there's an element of speech here in that claim. Okay. Again, I can only tell you my reading of the case. And we have to construe this statute broadly. Isn't that right? You do, as to the wrongful conduct. Do you want me to read the words to you? I'm well aware of that, Your Honor. Well aware of that, Your Honor. But when you read the statute broadly, you have to read it broadly as to the wrongful acts. That's what I'm saying. The use of the idea is not a, quote, allegedly wrongful and injury-producing act. It is simply the condition precedent per the contract to the promise to pay, which is what was held in Monts and Bonnet and Grosso. A lot of writers get exploited in this industry, don't they? They certainly do. Yeah. And this is what, one way of protecting them. Absolutely it is. And I'm trying to make sure that that way of protecting them doesn't disappear. That's why I'm here today. And that's why I'm saying, I don't, the Supreme Court case, as I read it, very clearly says that you can have within a single count multiple wrongful acts alleged. And if you do, it's possible that part of it applies from protected speech and part of it doesn't. And you can move to strike that part of it that goes to the protected speech. And what I'm saying, my position is, that the implied, in fact, contract doesn't involve two wrongful acts. It involves one wrongful act, the breach of the promise to pay, which this court found in Monts and Grosso and the other cases in which the California courts have held. The use of the idea is permitted. It's encouraged. It's what the writer wants. It's only when that happens, that's the condition precedent to the promise to pay. And when the payment is not made, that gives rise. That's the gravamen of the cause of action. I think we understand your argument, unless my colleagues have any further questions. All right. Thank you very much, sir. Thank you, Ron. All right. I promised you two and you got two. Thank you, Ron. Notably, Mr. Kulik doesn't dispute that the conduct at issue here does involve the creation and distribution of a feature film. The statute, the SLAP statute doesn't say what's the wrongful act. It says what is the act of the defendant that gives rise to the claim. And here there has to be more than one act. One of the acts is the creation and distribution of the film. And he's conceded that point. That clearly falls within the scope of the SLAP statute. Under this Court's decision, in the Doe case, which was the last time I appeared in front of Judge Pragerson, the Court said if but for the conduct, there wouldn't be a claim, then that speech-related conduct falls within the scope of the SLAP statute. But for the creation and distribution of these films, there wouldn't be a claim here. Whether he claims he should be paid for it or not is a separate issue from whether an act involving speech is part of the claim here. Ten pages of their complaint says it is. And Mr. Kulik says, well, we didn't intend to stop speech. We just want to get paid. But that's an intent-to-chill requirement that this Court rejected long ago. And the California Supreme Court has said you don't have to intend to stop speech. The question is whether the claim arises from speech. And if it arises from speech, even in part, it falls within the scope of the SLAP statute. Both the Doe and the Mindy's case use that but-for language, and so does the California Supreme Court. And I'd ask the Court to address that when it looks at this decision. I would like to just briefly respond on the merits. And what did the California Supreme Court say? The California Supreme Court said that the statute doesn't include any kind of intent-to-chill requirement. So you don't have to show, nor is it relevant, whether they wanted to stop speech or not. The question is, what is the conduct that the defendants engaged in that is the basis for the claim? And the conduct here is they distributed these films. The plaintiff claims he's then entitled to money as a result of that. If the act is wrongful or not is something that the Court addresses in the second prong of the statute. What was the defendant's conduct? Does that fall within speech or protected speech? That's the first prong. If so, then the question is, did they do something that entitles the plaintiff to money? That's in the second prong of the statute, not whether the SLAPP statute applies at the first instance. Preemption, which Mr. Kulik wants to focus on, that's a second prong issue. And it involves not conduct. You don't look at the acts of the defendant to determine if a claim is preempted. You look at what the rights are of the plaintiff. So that has always been decided on these idea submissions and other cases in the second prong analysis, not in the first prong analysis. So that really has nothing to do with whether this falls within the SLAPP statute. And there aren't any cases that draw that analogy. Granted, a creative argument, but it has nothing to do with the cases on whether the SLAPP statute applies. Why don't we wrap it up? I'm sorry? Why don't we wrap it up? Certainly, Your Honor. I just wanted to respond briefly on the merits issues. There is no case that has ever held what the plaintiff is asking this Court to adopt, which is that not the defendant got an idea submitted to him or her, but the defendant's agent didn't get the idea submitted to him or her. It's someone else who works at the same talent agency as the defendant's agents. Mr. Kulik has the burden of proving that there was direct authority, that the people who took the pitch from his client had actual authority from my clients to act on their behalf. There's no allegation in the complaint that says that Mr. Kramer or Mr. Davis had actual authority to act for the defendants, or even that they knew them, had ever met them, had ever heard of them. There's no allegation in the complaint on that. And this dramatic expansion of idea submission law should not be adopted. You know, the California Supreme Court went to great, it was a long, long opinion. And so here's a quote. For the benefit of litigants and courts involved in this sometimes difficult area of pretrial procedure, we provide a brief summary of the showings and findings required by section 425.16b. At the first step, the moving defendant bears the burden of identifying all allegations of protected activity and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to plaintiff to demonstrate that each challenge claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to stain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint unless they also support a distinct claim on which the plaintiff has to show a Is that been done? All those steps? Well, Your Honor, we do believe we met our burden under the first part of what the Boral Court says to show that the SLAP statute applies here by looking at the conduct of the defendants and how that conduct is alleged to give rise to the claims. At that point, the burden shifted to the plaintiff, and we do not believe the plaintiff met his burden. Anything else from our colleagues? Nothing. All right. Thank you very much, Counsel. Thank you, Your Honor. This case has been submitted. I appreciate your argument from both of you.
judges: Pregerson, D.W. Nelson, Owens